## Richmond.

LEE v. SMITH.

JANUARY 12th, 1888.

Absent, Lewis P.

WILLS—*Construction—Special legacy—Case at bar.*—Testator disposed of his whole estate by the first four clauses of his will, and in the fifth said : " Independent of all the provisions heretofore made by me I give eight hundred dollars out of the money due my estate to be applied to the education of my youngest daughter, Fanny."

HELD :

This legacy is to be paid out of any fund in hand, or other assets, real or personal, belonging to the estate.

Appeal from decree of circuit court of Warwick county, rendered February 14th, 1884, in the chancery suit wherein Robert H. Lee and R. D. Lee, trustees, suing for the benefit and at the costs of W. P. Chapman and Fannie, his wife, who was Fannie Lee, are complainants, and B. M. Smith and others the devisees and personal representatives with the will annexed of William Lee, deceased, are defendants. At the hearing the circuit court dismissed the bill and the complainants obtained an appeal to this court. Opinion states the case.

*W. G. W. Farthing* and *Sydney Smith,* for the appellants.

*J. F. Hubard,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

This suit was instituted, by appellants, to obtain a construction of the will of William Lee, deceased. No claims or rights of creditors are involved. It is simply a contest between the devisees and legatee under the will of their father, the testator, William Lee, deceased.

One set of beneficiaries, and the largest recipients of their father's bounty—both in his lifetime and by his will—striving to defeat and intercept the manifest intention and express provision of the testator, and uppermost in his solicitude, for his youngest daughter, who had not enjoyed a material advantage (of education) which her brothers and sisters had enjoyed, and which loss the testator intended, by this special provision in his will, to make up to her.

The record shows that William Lee, a gentleman residing in Warwick county, Virginia, was, in March, 1860, a widower with ten children—sons and daughters—married and single; the youngest of which daughters was Fannie Lee. He then owned a large real estate, and personalty beside, worth at least $125,000. In contemplation of a second marriage, he and his intended second wife executed an antenuptial marriage contract, by which he bound himself, his heirs, &c., to allow his said intended wife annually out of his estate, during the time she should remain his widow, four hundred dollars, to be paid yearly or half yearly by his heirs, executors, &c. And in consideration of this annuity, said intended wife covenanted to accept the said allowance and provision in full satisfaction and in bar of her dower or any other or further claim in or to his estate. This contract was duly witnessed, proved, and recorded in Warwick county clerk's office, and the intended marriage took place.

Afterward the said William Lee made his will dated September 4th, 1861; to which will he added a codicil dated 17th November, 1862, and another codicil dated 7th March, 1863. The testator died some time in 1863, and his said will

was duly proved and admitted to record in Warwick county court, on the — day of ——, 1866.

By the first clause of his will, the testator gives a tract of land to his son Robert H. Lee; by the second and third, he gives a tract of land to his son William Lee, and by the fourth, he gives all the remainder of his estate to his ten children— equally to be divided. By the fifth clause, testator says: "independent of all the provisions heretofore made by me, I give in trust to R. D. Lee and R. H. Lee, eight hundred dollars, out of money due my estate, to be applied to the education of my youngest daughter, Fannie Lee."

By the sixth clause, testator says: "I also desire that my executors, in the exercise of their best discretion, shall invest so much money out of my estate, in stocks or otherwise, as will yield a yearly income of four hundred dollars, to be paid by them, to my wife as provided for by our marriage contract.

By the first codicil of 17th November, 1862, the testator mentions the destruction of a dwelling-house, by the invading army of the United States, on the tract of land devised to his son William, and gives him $1,500 to replace it, and recognizes the detrimental effect of the war, and its doubtful result on his estate. By the second codicil of 7th March, 1863, he simply makes a change in the executors, and republishes his said will of September 4th, 1861. It appears from the record and the pleadings that the testator left very few debts, which amounted to only $1,000, after being allowed to accumulate by several years' delay in paying them. The personal estate, though diminished by the war and its results, was ample for the payment of the legacy of $800 to the trustees for Fannie Lee, and for payment of the debts. After payment of all the debts out of the personalty, a sum more than sufficient for payment of this legacy of $800 to Fannie Lee remained, and was applied to payment, *pro tanto*, of the annuity to the widow, whereby the personalty was exhausted. After exhausting the personalty thus, there were sales of realty, and the proceeds

applied *pro tanto*, to paying the balance of *arrears* of this annuity, or of the sum agreed on in commutation thereof. This legacy given in the fifth clause to Fannie Lee, has never been paid to any one, in whole or in part, and for this reason, the legatee was not educated. She is now the wife of William H. Chapman. The trustees under the fifth clause, suing for the use of said William H. Chapman and Fannie Lee, his wife, who are substantial complainants below, and appellants here, filed their original bill in the circuit court of Warwick county, to which all the other parties interested in the estate of William Lee, deceased, are made parties defendant. The bill prays a construction of the will, and alleges that this legacy of $800 in the fifth clause, is a charge on the land of the testator after exhaustion of the personalty, and prays that the said legacy of $800, with interest from one year after the testator's death, be decreed to be paid out of the proceeds of sales of realty, then under the said circuit court. R. Lee Davis, in his own right, and as administrator *c. t. a.*, of William Lee, deceased, answered, and says that the personal estate of the testator was sold, and debts due the estate collected, and the proceeds disposed of in various ways. The guardian *ad litem* of the infant defendants also filed a formal answer. The complainants, by leave of the court, filed an amended bill charging that portions of the real estate of the testator had been sold for payment of debts, and the surplus paid over to devisees. That money belonging to the estate had been exhausted in paying debts and the annuity to the widow, which had been secured by ante-nuptial contract on the whole estate, real and personal; and claiming that the legatee, Fannie Lee, is entitled to be substituted to the rights of the widow, thus using and exhausting her fund. The bill charges that in the report in another suit (*Smith* v. *Green*), the debts will more than exhaust the personalty in expectation, and that if the personalty be thus exhausted, and the lands divided among the devisees before payment of this legacy to Fannie Lee, the intent of the testator will be defeated, as he

manifestly intended and provided that the division should be made after she had received her legacy of $800, or the education it was to afford her, to make her equal. The bill prays that the said legacy, with interest, be paid out of the fund under the control of the said circuit court, in the cause of *Smith* v. *Green.*

R. Lee Davis, administrator *c. t. a.* of William Lee, deceased, and in his own right, answered this amended bill, that the entire personal estate, and what has been realized from debts and claims due to the testator, has been expended, in costs of litigation, in payment of debts, $1,000, and in payment of arrears of annuity to the widow, *pro tanto*, leaving a balance still due the widow on said arrears of $2,208 38, as of July 9th, 1879, to be increased annually by $400 on each 31st of May, which liability for arrears and future payments of annuity has been arranged and settled out of proceeds of sales of land under control of the circuit court in the cause of *Smith* v. *Green,* $3,000 having been thus paid; that there are claims still due the estate, but not enough to repay to the parties the $3,000 so paid on the annuity. The answer denies the right of complainant to substitution to the right of the widow, and alleges that as the legatee, Fannie Lee, was not educated, and cannot now be educated, the purpose of the testator cannot be effected, *and the legacy fails.* None of the other parties in interest and defendants answered; and as to them all (except the infant defendants) the bill and amended bill are taken *pro confesso.*

The circuit court, by final decree of 27th April, 1885, decided that the complainants were not entitled to be paid the legacy out of the proceeds of sale of realty devised to testator's children; that they were entitled to have said legacy paid out of the personal assets of the testator, but only after payment of debts, liabilities, and costs of administration, and dismissed the bill, with costs against the complainants. From this decree the complainants have obtained this appeal.

We are of opinion to reverse the decree complained of, because the complainants were entitled to a decree for payment of the legacy, given in the fifth clause to Fannie Lee, with interest and costs of suit, out of the fund in control of the court, arising from sales of the *realty;* the *personalty*, out of which this legacy could and should have been paid, in obedience to the manifest and primary intent of the testator, having been misapplied, in the first place, to the payment of the annuity which was a charge upon the land of the testator.

The intention of the testator, as plainly ascertained from the will itself, must control the construction of the will and the administration of the estate. The intent to be sought for and effectuated by the court, is the intent and purpose of the testator at the date of his death, or at least at the latest date when he had testamentary capacity; and the intent here, is that which William Lee had, in 1863, when he died, and when the record shows he knew the condition of his estate, and its diminished value. It was clearly his intention that his youngest daughter, Fannie Lee, should have the benefit of an education, as his other children had received, and suitable to her station as child of a man of wealth and position; and he accordingly set apart for her $800, to enable her to obtain such education, and made no provision for its reverting to his estate, in any event causing failure to obtain the education. She did not receive the education, through the fault and wrong of those who withheld from her the means left by the testator, dedicated and consecrated to this purpose. To cause the legacy to fail for this cause, and to revert to the general estate for distribution, would make the innocent legatee pay the penalty of the others' default, and allow them to take advantage of their own wrong, and would open a wide door for fraud and oppression.

The manifest intent of the testator was to give to his youngest daughter $800, to be paid *at once*, and to have priority over

all other bequests and devises; and the purpose for which it was given necessitated payment *without delay.*

The testator was fully aware that, by the first four clauses, he had appropriated all his estate, real and personal; yet, he in the fifth clause gives to this youngest daughter, in emphatic terms and as a matter of justice to her, this $800, to be paid and promptly paid for an expressed purpose which could brook no delay. He knew that the only source of payment of it was the property disposed of in the four preceding clauses, and he meant that it should be paid out of his entire estate therein disposed of, or, at least, out of the personalty as a primary and paramount demand on it. When he says—"independent of all the provisions heretofore made by me, I give," &c.,—he meant something by these unusual and energetic words; and he did not mean to postpone the payment of this legacy to the devises and bequests in the first four clauses of his will, for that would have made the fifth clause nonsense, as there would be nothing left to pay it out of. When, therefore, he gives this legacy of $800 for an immediate and expressed purpose, and makes it independent of the provisions just made, he means that it shall be paid out of his estate before all other demands upon it. The devises and bequests, in all the provisions hitherto made, are subordinate to the legacy given in the fifth clause, and the devisees and legatees under the first four clauses of the will must take their bounty subject to the paramount right of the legacy.

The record shows that there was enough personalty and choses collected to pay this legacy, had it been so applied, as it ought to have been; instead of which, it was misapplied to debts and to liability for the arrears of annuity to the widow— to relief of the devisees—to whom it was expressly made independent and paramount, for the debts were general liens on the realty, and the widow's annuity was also a claim of record, superior to the devises; and it is this annuity, which, by being

allowed to absorb the personalty, has deprived the complainants of the payment of the legacy out of the personalty.

The annuity, under the marriage contract, was a charge on the land, and it was in relief of the land from dower; had it not been paid the widow could have claimed her dower. But the testator made special provision for its payment, after having made the bequest of the $800 in the fifth clause. By the sixth clause he directs his executors to invest enough "money out of my estate to produce an annual income of $400, to be paid to my wife according to our marriage contract." They were to preserve the *corpus*, and pay the income to Mrs. Lee so long as she remained the widow of testator, and then, on its reverting to the estate, distribute the *corpus* to those from whom it had been raised. Instead of this, the *principal* of collections of money due from debtors of the testator, or from sales of personalty, was applied to the payment of the annuity, thereby exhausting the fund on which the legatee, under the fifth clause, had a first claim by the will.

It appears, by the record, that the sum of $4,192 of the proceeds of the personalty—of money due the estate—was diverted from payment of this legacy and applied to the payment of the annuity, in violation of the sixth and fifth clauses of the will. Add the $1,000 of debts to this $4,192 and it shows $5,200 of personal assets applicable to the payment of this legacy, beside whatever was paid in costs of litigation. The balance of arrears of the annuity and the annual accretions of $400 were paid out of proceeds of sales of realty—$3,000 was so paid—and the devisees of this realty claim to be reimbursed out of the remaining personalty. And Fannie Lee is made, by the decree of the court, to lose her legacy, as well as her education, simply because the fund which would have paid the legacy and secured the education, was misapplied to the annuity, in violation of the testator's intent and direction, and in relief of the devisees.

There are many cases cited and law points discussed in the argument, but they do not apply to or arise in this cause. The right of the complainants is derived, not from the general law of *substitution,* but from the terms of the will and the intent of the testator. From the paramount right which he gives the legatee to payment out of the whole estate, primarily out of the personalty, prior even to the debts of the testator, and unaffected by the resort of the creditors to the realty, if there were not enough for the debts after the legacy was paid. Had the intent and plain direction of the testator been obeyed, the legacy would have been promptly paid within the year, and Fannie Lee would have been educated. The principal of the $400 annuity would have been raised, by loan or by sales of the realty and balance of personalty, and invested, the *corpus* or principal preserved to revert, and the annual $400 paid to the annuitant without arrears. The legacy and this contract for the annuity have priority over the devises in the first, second, and third clauses of the will, as well as over the remainder of the realty and personalty disposed of by the fourth clause.

The decree complained of is erroneous, and must be reversed and annulled, and payment of the legacy to Fannie Lee by the fifth clause of the will of the testator will be decreed out of any fund in hand, or other assets, real or personal, belonging to the estate, with costs in favor of the complainants and appellants.

HINTON, J., dissented.

DECREE REVERSED.